# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

**FRANCISCO STARKS**                                                     **PLAINTIFF**

v.                                                                   **Nos. 5:22-cv-185-BJB**

**MAYFIELD CONSUMER PRODUCTS, LLC, ET AL.**                              **DEFENDANTS**

\* \* \* \* \*

## OPINION & ORDER

A devastating tornado ripped across more than 150 miles of western Kentucky in December 2021, leveling—among many, many other things—a candle factory operated by Mayfield Consumer Products. Tragically, the tornado killed and injured many people working at the factory. Several lawsuits followed, including this one—brought by Francisco Starks.

Starks was an inmate at the Graves County Jail, working at MCP that night as part of a work-release program. Fortunately he survived. But according to the complaint he now suffers from PTSD. He sued MCP and Justin Bobbett (a supervisor), claiming that their acts and omissions that night violated Kentucky statutes and common law. Starks, however, has forfeited his claims against MCP and Bobbett by responding to the motion to dismiss perfunctorily or not at all. And in any event the Kentucky Workers' Compensation Act bars those claims, which independently would fail under federal pleading standards. In short, Kentucky statutory law establishes workers' compensation as the source of Starks's relief and Kentucky tort law sets a standard for outrageous conduct and intentional harm that Starks cannot meet. None of this, of course, in any way diminishes the seriousness of the actions and allegations regarding the tornado or the injuries citizens like Starks suffered as a result. But given the law and allegations here, the Court grants MCP's and Bobbett's motion for judgment on the pleadings (DN 18).[1]

---

[1] Starks also brought numerous state and federal claims against two Graves County jailers—Robert Daniel and George Workman—Daniel's Estate, and the Graves County Fiscal Court. On the eve of the hearing regarding the pending motions in this case, these non-MCP Defendants filed a proposed agreed order, signed by Starks, to dismiss those Defendants from the case with prejudice. *See* DN 28. The parties didn't identify the rule under which they seek dismissal, but presumably they wish to do "by court order" so under FED. R. CIV. P. 41(a)(2). (This is not a Rule 41(a)(1)(A) filing that takes effect of its own force because it precedes a responsive pleading or has been signed by all parties; the MCP Defendants haven't agreed to the dismissal.) Only Starks's state-law claims against non-completely diverse defendants, now in federal court based on supplemental jurisdiction, *see* 28 U.S.C. § 1367(a),

1

## I. This Litigation

Francisco Starks is currently incarcerated at the Western Kentucky Correctional Complex in Fredonia. Complaint (DN 1-1) ¶ 1. According to his complaint, which the Court must accept as true at this stage, Starks was participating in the Graves County Jail's work-release program when the tornado hit. ¶¶ 20–21. Starks asserts that he "was an employee of [MCP]," ¶ 22, working at MCP's candle factory the night of the tornado, ¶ 11. MCP allegedly "threatened to terminate any employee," including him, "who left because of the expected tornado"—despite MCP's "advance notice of the danger the tornado posed." ¶¶ 11–12. Bobbett, in particular, "informed employees that they would be terminated if they attempted to leave" the factory. ¶ 19. MCP, moreover, failed to "trai[n]" its employees on "safety protocols," hadn't installed "an emergency alarm inside of the candle factory," and "did not provide adequate shelter for those inside of its facility." ¶¶ 13–15. As a result, Starks "sustained injuries" and "has been diagnosed with PTSD." ¶¶ 28, 32.

Seeking damages, Starks sued in Graves Circuit Court, claiming that MCP (and presumably Bobbett[2]) committed the torts of false imprisonment (in its common-law and statutory variants), *see* ¶¶ 25–28, 42–50, and intentional infliction of emotional distress, *see* ¶¶ 29–35.[3] The Defendants then removed to federal court.

---

would have remained. Balancing the interest of "judicial economy" and "the avoidance of multiplicity of litigation" against the prospect of "needlessly deciding state law issues," the Court declines to exercise "residual" jurisdiction or remand the case. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (quotations omitted). Instead, given the parties' considerable briefing and preparation, the Court declines to consider the non-MCP Defendants' last-minute request in advance of the fully briefed pending motions addressed in this Order. The MCP Defendants have litigated these issues in this Court extensively and filed their motion months before the non-MCP Defendants filed their proposed agreed order. To force the MCP Defendants to return to state court and rewind the motions practice that has already taken place, just because the other parties have agreed to dismiss their claims on the eve of the Court's ruling, would be highly prejudicial. At the hearing, Starks's counsel certainly didn't give any reason to think otherwise.

[2] The targets of the complaint are hard to fix: The false-imprisonment and IIED counts mention only MCP, Complaint ¶¶ 25–35, 42–50, while the "vicarious liability" count mentions MCP along with Bobbett and non-defendant identified only as "Lorenzo." ¶¶ 36–41. ("Lorenzo" presumably refers to Lorenzo Cash, a defendant in related cases. *See* Case Nos. 5:23-cv-5 and 5:23-cv-18.) The motion for judgment on the pleadings presumes that all claims run asserted against both MCP and Bobbett—and this Order conservatively does the same.

[3] Starks also pled a freestanding "vicarious liability/Respondeat Superior" claim, stating that MCP is "liable" for Bobbett's acts. ¶ 40. "[R]*espondeat superior*," however, "is not a cause of action," but rather "is a basis for holding [MCP] responsible for the acts of its agents." *O'Bryan v. Holy See*, 556 F.3d 361, 370 n.1 (6th Cir. 2009). So the Court dismisses that claim with the understanding that it may "factor into" the Court's "discussion of the other claims." *Id.* (cleaned up).

MCP and Bobbett moved for judgment on the pleadings. *See* DN 18. They argue that the KWCA bars Starks's claims, which arise from alleged work-related harm and don't fall within an exception to the KWCA's exclusive-remedy provision. In their eyes, moreover, Starks's allegations fail to plausibly state a claim on which relief can be granted.

## II. Starks's Allegations Fail to State a Claim

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). "Courts must accept as true all well-pleaded factual allegations, but they need not accept legal conclusions." *Id.* And the "complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That means "the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Starks responds, without support, that the motion for judgment on the pleadings should be "treated as a motion for summary judgment" and is "premature" because he hasn't "had the opportunity to conduct any discovery whatsoever." Response to MJP (DN 22) at 1. Presumably he's referring to the rule that "the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Rule 12(c) motion to a motion for summary judgment." *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006). The Defendants' motion, however, does not present evidence outside of the pleadings. The motion's exhibits—MCP's certificate of workers' compensation coverage and an order denying a motion to intervene in a different case—are "public records" that the Court may consider without converting the motion to one for summary judgment. *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 467 (6th Cir. 2011) (quotation omitted); *see also Boggs v. Appalachian Reg'l Healthcare, Inc.*, No. 7:20-cv-151, 2021 WL 5413801, at *4 n.7 (E.D. Ky. July 16, 2021) (certificate of coverage qualifies as a public record).

### A. The Kentucky Workers' Compensation Act bars Starks's claims.

The KWCA contains an "exclusive remedy" provision that "grants immunity for liability arising from common law and statutory claims" based on a "work-related injury." *Kentucky Employers Mutual Insurance v. Coleman*, 236 S.W.3d 9, 13 (Ky. 2007) (quotations omitted). "If an employer secures payment of compensation as required" under the KWCA, "the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee." Ky. Rev. Stat. § 342.690(1). That "exemption from liability … also extend[s] to … all employees, officers or directors of such employer." *Id.* "[U]nless a worker has expressly opted out of the workers' compensation system, the injured worker's

3

recovery from the employer is limited to workers' compensation benefits." *Beaver v. Oakley*, 279 S.W.3d 527, 530 (Ky. 2009).

The Act provides two exceptions to this rule of exclusivity. The first applies if the employer "deliberate[ly] inten[ded]" to injure the employee. § 342.610(5). In other words, "the employer must have determined to injure an employee and used some means appropriate to that end, and there must be a specific intent." *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 615 (6th Cir. 2005) (quoting *Fryman v. Electric Steam Radiator Corp.*, 277 S.W.2d 25, 27 (Ky. 1955)). The second exception applies if "the injury or death is proximately caused by the willful and unprovoked physical aggression" of an employee. § 342.690(1).

Starks doesn't dispute that MCP has workers' compensation coverage. Nor does he dispute that his claims arise out of an alleged work-related injury. He instead states that he "has yet to receive any actual benefits" and "was informed" (by whom he doesn't say) "that he was not entitled to compensation while he was locked up." Response to MJOP (DN 22) at 2. Starks fails to explain the legal import of those assertions, let alone cite any caselaw to support them. To the extent these are even legal contentions, they are "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" and therefore "forfeited." *Buetenmiller v. Macomb County Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quotation omitted). In any event, the Kentucky Supreme Court has held that "the fact that a remedy for a work-related injury is unavailable under the Workers' Compensation Act does not authorize bringing a civil action for damages." *Shamrock Coal Co. v. Maricle*, 5 S.W.3d 130, 134 (Ky. 1999). So even assuming Starks hasn't and won't receive workers' compensation, that alone doesn't push his claims outside the zone of KWCA exclusivity. *Id.*

Starks's more discernable contention is that one (or perhaps both?) exceptions to KWCA exclusivity strip the MCP Defendants of any KWCA-based "immunity." *See* Response to MJOP at 2–3. Yet this argument, too, is underdeveloped and arguably forfeited. Starks merely block-quotes portions of the KWCA and a single Kentucky Supreme Court opinion, provides no analysis, and declares that "[t]he above language is clear: Francisco Starks has the ability to file a civil lawsuit against Mayfield Consumer Products and is not required to pursue a worker's compensation claim." *Id.* at 3. Here again "any argument … is virtually absent" other than a "conclusory assertion" that Starks may hold MCP and Bobbett liable for work-related harm. *Buetenmiller*, 54 F.4th at 946. He makes no attempt to fit the KWCA's exceptions to the allegations in his complaint. *See* Response to MJOP at 2–3. And the Court isn't required to "put flesh" on the "bones" of a "skeletal" argument. *Buetenmiller*, 54 F.4th at 946 (quotation omitted).

But even if Starks hadn't forfeited these arguments, he can't recover under either exception. *First*, the complaint doesn't allege that MCP or Bobbett deliberately intended to injure him—the only exception he expressly relies on. "[M]erely asserting an intentional tort," like false imprisonment or IIED, "fails to meet the statute's heightened deliberate-intention exception." *Cox v. Koninklijke Philips, N.V.*, 647 F.

4

App'x 625, 631 (6th Cir. 2016). And the allegation that MCP and Bobbett threatened Starks with termination despite their knowledge of the danger the tornado posed doesn't amount to an assertion that MCP and Bobbett "specific[ally] inten[ded]" to "injure" him. *Rainer*, 402 F.3d at 615. Although MCP's and Bobbett's alleged conduct could perhaps be classified as "reckless or wanton" (though Starks himself doesn't describe it that way), there is "no indication or reasonable inference that [they] intended to injure" Starks by threatening to terminate him if he left work in light of the approaching tornado. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 536 (6th Cir. 1999); *see also Cox*, 647 F. App'x at 627, 630 (allegation that employer "deliberately" exposed employees to "hazardous substances" did not support a reasonable inference of a "specific intent to injure" under the KWCA). So the deliberate-intention exception doesn't save this claim.

*Second*, the complaint doesn't even allege that MCP or Bobbett injured Starks through "willful and unprovoked physical aggression"—the second exception. *See* § 342.690(1). Instead it merely asserts that MCP lacked adequate safety protocols, *see* Complaint ¶¶ 12–15, and that MCP and Bobbett told Starks that if he left work, he'd be fired, ¶¶ 12, 19. Neither refers to a physical act—only the lack of a policy and a verbal warning, respectively. Unsurprisingly, given the text of the statute, the Kentucky Supreme Court and Sixth Circuit both have emphasized the requirement of "*physical aggression.*" *Shamrock Coal*, 5 S.W.3d at 135 (quotation omitted) (emphasis in original); *see also Brierly*, 184 F.3d at 536 (exception requires "intentiona[l] and physica[l] attac[k]"). For example, the Kentucky Supreme Court has held that an allegation that a company "intentionally violated safety procedures," causing employees to "suffer extreme emotional distress," doesn't trigger the exception; that is because violating safety procedures—without more—doesn't amount to "unprovoked physical aggression" against the employees. *Shamrock Coal*, 5 S.W.3d at 132, 135. Nor are a supervisor's "reassur[ances]" to an employee about the "many precautions" taken to prevent a "highly flammable" machine from exploding enough to implicate the exception—at least without a showing that the supervisor "intentionally and physically attacked him." *Brierly*, 184 F.3d at 529, 536. Likewise here: even assuming MCP and Bobbett violated safety procedures and recklessly threatened to terminate employees who left work, Starks hasn't alleged that those Defendants "intentionally and physically attacked him." *Id.* at 536. So this exception doesn't apply either.[4]

---

[4] Plaintiffs in related cases have cited *Brewer v. Hillard*, 15 S.W.3d 1 (Ky. Ct. App. 1999), for the proposition that an IIED claim arising out of allegations that don't involve physical contact somehow satisfies the exception for "willful and unprovoked physical aggression." *See, e.g.*, *Aliff v. Mayfield Consumer Products*, No. 5:23-cv-5, Docket No. 25, at 18–19. But as another court in this Circuit has explained, "*Brewer* involved a sexual harassment claim filed against the plaintiff's supervisor for, among other things, calling him sexually explicit names and grabbing his buttocks." *Meade v. Arnold*, 643 F. Supp. 2d 913, 921 n.3 (E.D. Ky. 2009). Here, "[u]nlike *Brewer*," the allegations involve "no physical contact" (or even the threat of it), so the physical-aggression exception doesn't apply. *Id.*

5

Because Starks's statutory and common-law false-imprisonment claims and IIED claim arise out of work-related harm that does not implicate either exception to the KWCA exclusive-remedy provision, his claims are barred.

### B. Starks forfeited his false-imprisonment and IIED claims, which aren't well-pled in any event.

MCP and Bobbett contend that Starks's complaint also fails for additional reasons—namely, even if the KWCA didn't bar his claims, Starks failed to allege facts that would plausibly state a claim for false imprisonment or IIED. *See generally* MJOP at 10–18. Starks's response, however, fails to address those arguments: it doesn't mention the words "false imprisonment" or "emotional distress" even once. And a "party's failure to respond to an argument raised in a motion to dismiss results in the forfeiture of the argument." *KSA Enterprises, Inc. v. Branch Banking and Trust Co.*, 761 F. App'x 456, 463 (6th Cir. 2019). That's also true in the context of a motion for judgment on the pleadings. *See Threat v. City of Cleveland*, 6 F.4th 672, 681 (6th Cir. 2021). Whether Starks stated a claim against MCP and Bobbett is, of course, a dispositive issue independent of the KWCA's applicability. So Starks's forfeiture of any argument in support of these claims warrants judgment on the pleadings all by itself.[5]

---

*Brewer*, moreover, relied on *Russell v. Able*, 931 S.W.2d 460, 462–63 (Ky. Ct. App. 1996), in stating that "an employee who received workers' compensation for an injury caused by the intentional act of a co-employee [is] not precluded from maintaining an action in tort against the co-employee." *Brewer*, 15 S.W.3d at 9. But *Russell* (like *Brewer*) involved physical contact. 931 S.W.3d at 461. And even then, the court held that the plaintiff's claims could avoid KWCA exclusivity only if the co-employee's "act was outside the scope of employment." *Id.* at 463. On the flip side, other actions that lie within the scope of employment (if only just) like, say, holding a snake in the office of a coworker who was afraid of snakes, do *not* amount to "willful and unprovoked physical aggression" because of the lack of physical contact or threat thereof. *Jones v. Dougherty*, 412 S.W.3d 188, 194 (Ky. Ct. App. 2012). Here, Starks's complaint specifically alleges that Bobbett had "act[ed] in the course and scope of [his] employment" and doesn't allege any physical contact or threat of physical contact on the part of Bobbett or any other MCP employee. Complaint ¶ 39. Rather, the allegations are crystal clear that the threat was employment termination, not physical confrontation. So *Brewer* and *Russell* would not save Starks's claims even if he had advanced these arguments.

[5] Starks, without explanation, states that he "joins in the response of the plaintiffs in *Elijah Johnson, et al. v. Mayfield Consumer Products, LLC*, civil action no. 5:22-cv-00044-BJB. The response is docket number 49." Response to MJOP at 1. The Court construes this as an attempt to incorporate by reference the brief of other parties, regarding non-identical allegations, filed by different counsel, in a different case, which hasn't been consolidated with this one. As other courts have recognized, this is not a proper way to respond to a dispositive legal argument. *See, e.g.*, *Whitlock v. Pepsi Americas*, 681 F. Supp. 2d 1116, 1120 (N.D. Cal. 2010) ("[I]t is wholly improper to incorporate by reference an opposition brief filed in another case."); *United States v. Rich*, No. 18-2268, 2021 WL 4144059, at *40 (6th Cir. 2020) ("[I]t is well settled that a party forfeits skeletal arguments, and presenting a district court with only

Regardless, even if Starks hadn't forfeited those arguments, his complaint fails to state a claim against MCP or Bobbett.

### 1. False Imprisonment

"Kentucky cases define false imprisonment as [a] deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats or otherwise." *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. Ct. App. 2001). False imprisonment requires that "there be some direct restraint present." *Ford Motor Credit Co. v. Gibson*, 566 S.W.2d 154, 155 (Ky. Ct. App. 1977). That restraint "may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if the plaintiff does not submit." *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 288 (Ky. Ct. App. 2009) (quoting *Ford Motor Credit*, 566 S.W.2d at 155). But a person who "submi[ts] to the mere verbal direction of another unaccompanied by force, or threats of any character," isn't falsely imprisoned under Kentucky caselaw. *Id.* (quoting *Ford Motor Credit*, 566 S.W.2d at 156). So "actual physical restraint is sufficient," while "'[b]are words are insufficient.'" *Id.* (quoting *Ford Motor Credit*, 566 S.W.2d at 156) (alteration in original).

Starks's allegations don't follow that trail. He merely asserts that Bobbett's and other MCP employees' "bare words"—verbal threats to terminate his employment if he were to leave work—prevented him from leaving the candle factory before the tornado hit. That's not enough. After all, the "key element of false imprisonment is that one is *involuntarily* restrained." *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 277 (Ky. Ct. App. 1981) (emphasis added). Examples of involuntary restraint include a teacher chaining a high school student to a tree, *see Banks v. Fritsch*, 39 S.W.3d 474, 476, 480 (Ky. Ct. App. 2001), and a supervisor "depriv[ing]" an employee of "her clothing," subjecting her to "search and seizure of her body" despite her "repeate[d] object[ion]," and "threaten[ing]" her "with further police involvement," all while she was "under the impression the door had been locked" and faced with a "constant guard between herself and the door," *Ogborn*, 309 S.W.3d at 281–82. Starks's allegations don't come close to the situations in those cases. Indeed, an employee whose "restraint" stems from his "interest in retaining an untenured

---

incorporated-by-reference filings did just that.") (internal citation omitted). Beyond its procedural impropriety, Starks's reference to the *Johnson* brief is unorthodox for another reason: the Court had *already rejected* the relevant arguments in that brief by the time Starks cited it here. *See Johnson*, No. 5:22-cv-44, Docket No. 58 (memorializing oral ruling granting MCP's motion for judgment on the pleadings with respect to the plaintiffs' common-law and statutory false-imprisonment claims and IIED claim). So the Court declines to consider the arguments made by other parties in another case, and even if it did, those arguments would fail for the same reasons the Court already rejected them. Certainly Starks offers no basis to revisit this Court's prior decision in the context of this case.

position … fall[s] short" of the threshold showing for false imprisonment. *Columbia Sussex*, 627 S.W.2d at 278.[6]

The mere threat to terminate an employee who leaves work early—unaccompanied by any suggestion that physical consequences might ensue if the employee doesn't comply—doesn't constitute false imprisonment just because the employee wanted to keep his job and voluntarily kept working. *See* Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 42 (2d ed.) ("[O]f course a threat to do what the defendant is privileged to do, to fire an at-will employee if she leaves work, is not an actionable confinement."). With no allegation that Bobbett or another supervisor "induce[d] a reasonable apprehension" that he would use "force" if Starks "[did] not submit," the complaint fails to state a claim for false imprisonment against the MCP Defendants. *Ogborn*, 309 S.W.3d at 288 (quoting *Ford Motor Credit*, 566 S.W.2d at 155).[7]

### 2. IIED

Starks's IIED claim fares no better. The Kentucky Supreme Court has "set a high threshold" for an IIED claim—requiring conduct that "deviat[es] from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004), *overruled on other*

---

[6] These false-imprisonment examples bear some resemblance to the KWCA exceptions discussed above regarding "deliberately intending" to injure an employee or "willful and unprovoked physical aggression." But the categories, though overlapping, remain distinct in their scope (and apparently their origin as well). A prima facie case of false imprisonment wouldn't automatically satisfy the KWCA exceptions. False imprisonment, for example, doesn't require a specific intent to *injure* someone: while "actual violence" *can* of course imprison someone, it isn't essential. What the tort requires is a "deprivation of the liberty" of a non-consenting person, for "however short a time," through "threats or otherwise." *Ogborn*, 309 S.W.3d at 288 (quoting *Grayson Variety Store, Inc. v. Shaffer*, 402 S.W.2d 424, 425 (Ky. 1966)). And it follows that a person needn't engage in the sort of "unprovoked physical aggression" that would satisfy the KWCA in order to falsely imprison someone; inducing a "reasonable apprehension that force will be used if the person does not submit" is enough. *Id.* (quoting *Shaffer*, 402 S.W.2d at 425).

[7] As mentioned above, Starks also claimed that MCP and Bobbett violated Ky. Rev. Stat. §§ 509.020, 509.030—Kentucky statutes that criminalize "unlawful imprisonment." *See* § 446.070 (anyone "injured by the violation of any statute" may sue for damages). A person commits second-degree unlawful imprisonment "when he knowingly and unlawfully restrains another person." § 509.030. First-degree unlawful imprisonment is the same, only with the additional requirement that the defendant must "expose that person to a risk of physical injury." § 509.020. Starks hasn't alleged that they "restrained him," as MCP and Bobbett note. MJOP at 13. Nothing suggests, moreover, that the bar for recovery based on Kentucky's criminal statute is lower than for recovery based on a tort alone. And Starks, as discussed, didn't respond to MCP's argument, thereby forfeiting this claim as well.

*grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014) (quotation omitted). The complaint doesn't meet that threshold.

The type of conduct Kentucky courts have recognized as "outrageous and intolerable" is—to put it lightly—appalling. Examples include "agree[ing] to care for plaintiff's long-time companion-animals, two registered Appaloosa horses, and then immediately s[elling] them for slaughter," *id.* at 790 (citing *Burgess v. Taylor*, 44 S.W.3d 806, 809–12 (Ky. Ct. App. 2001)); "subject[ing] plaintiff to nearly daily racial indignities for approximately seven years," *id.* (citing *Wilson v. Lowe's Home Center*, 75 S.W.3d 229, 238 (Ky. Ct. App. 2001)); and "intentionally fail[ing] to warn the plaintiff for a period of five months that defendant's building, in which plaintiff was engaged in the removal of pipes and ducts, contained asbestos," *id.* at 789 (citing *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 196 (Ky. 1994)).

Even examples of conduct that *didn't* meet the legal threshold for outrageous behavior are ones that could fairly be described in common parlance as extreme. IIED liability didn't apply, for example, to a nurse who ordered a woman, "who was hysterical over the fact that she had just delivered a stillborn child in her hospital room, to 'shut up' and then inform[ed] her that the stillborn child would be 'disposed of' in the hospital." *Id.* at 790 (quoting *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2, 4 (Ky. 1990)). Nor did a pastor who impregnated his parishioner's wife commit "outrageous and intolerable" conduct under Kentucky law giving rise to IIED liability. *See id.* at 791 (citing *Arlinghaus v. Gallenstein,* 115 S.W.3d 351 (Ky. Ct. App. 2003)).

Threatening to fire someone for leaving work, even under exacerbating circumstances, doesn't match those examples. Multiple Kentucky courts have held that actually firing an employee and accusing him or her of embarrassing or gross conduct isn't enough. *See Field v. Appalachian Regional Healthcare, Inc.*, No. 11-cv-136, 2012 WL 2021827, at *7 (E.D. Ky. June 5, 2012) ("Terminating an employee for repeatedly failing to document the use of controlled substances" isn't "outrageous"); *Brett v. Media General Operations, Inc.*, 326 S.W.3d 452, 459 (Ky. Ct. App. 2010) (firing employee and then accusing him of sexually assaulting co-workers and committing "immoral acts" in a manner "designed to ruin his reputation" was not extreme and outrageous); *Miracle v. Bell County Emergency Medical Services*, 237 S.W.3d 555, 557, 559–60 (Ky. Ct. App. 2007) (telling employer that employees were not qualified, leading to their termination, was not extreme and outrageous); *Bednarek v. United Food & Com. Workers Int'l Union, Loc. Union 227*, 780 S.W.2d 630, 632 (Ky. Ct. App. 1989) (wrongfully discharging an employee in retaliation for filing a workers' compensation claim was not extreme and outrageous). So threatening to fire an employee, standing alone, plainly doesn't suffice—as these precedents make clear.

To be sure, Starks and the plaintiffs in related cases allege no ordinary termination; they accuse the factory of threatening to fire them for fleeing an oncoming tornado. Complaint ¶¶ 11. Is that sort of threat, under these extreme circumstances, the type of "utterly intolerable" conduct on which an IIED claim may

9

stand? *Stringer*, 151 S.W.3d at 791 (quotation omitted). Perhaps it would be under some conditions—for example, if Starks alleged that MCP or Bobbett told employees that even though a tornado might hit they had to keep working to meet production quotas. Notably, the complaint includes no such allegation; it says only (and without support) that MCP "had advance notice of the danger the tornado posed," ¶ 11, but adds nothing about alternative safety options or the decision to remain in place. To put a finer point on it, Starks does *not* allege the managers could've safely evacuated the factory before the tornado hit but instead chose to force employees to keep working, and in so doing recklessly exposed them to severe emotional distress (or any other harms). Instead, the complaint focuses on decisions MCP made *before* the tornado came (the absence of adequate safety training, alarms, and shelter) that might, in hindsight, sound like negligence—but not outrageousness. *See* Complaint ¶ 13–15. More serious allegations—that the Defendants effectively disregarded escape in pursuit of profit—would've at a minimum raised different questions than the ones now before the Court. As it stands, however, the allegations Starks does offer fall short of the "outrageous" conduct prior Kentucky decisions have required to state a claim.

Beyond their conduct, what about the Defendants' intent? This raises a related point. Although Starks's allegations (taken as true) suggest poor—perhaps even callous—judgment on the part of MCP and Bobbett, they don't allege facts that the Defendants *intentionally intended to cause* their employees emotional harm. *See, e.g.,* Restatement (Second) Torts § 46. Even assuming MCP's and Bobbett's alleged conduct was in fact "outrageous," the complaint doesn't assert that the Defendants meant to cause Starks emotional distress. Again, that would be quite a serious and concerning accusation. Yet the complaint doesn't say anything about why the Defendants took the actions they did. "[T]he conduct at issue" in an IIED claim, of course, "must intentionally or recklessly be done to cause emotional distress." *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012) (emphasis omitted). And Starks hasn't alleged that the Defendants "had the specific purpose of causing emotional distress (intentional) or intended a specific conduct and knew or should have known that it would cause emotional distress." *Id.* (emphasis omitted).

He notes that he "has been diagnosed with PTSD" "as a direct result of the[se] events," to be sure. Complaint ¶¶ 10–12, 32. But that addresses a separate element: the existence of a plaintiff's injury doesn't mean that the defendants intended to cause it. Nor does Starks allege that MCP or Bobbett should have known that their threat—as distinct from the tornado itself—would cause PTSD. And intent or recklessness is an essential element of IIED. *See, e.g.*, *Archey v. AT&T Mobility, LLC*, No. 17-cv-91, 2017 WL 6614106, at *3 (E.D. Ky. Dec. 26, 2017) (plaintiff "failed to allege facts that show Defendants 'intended to cause emotional distress when it terminated Plaintiff or that Defendants acted recklessly'" (cleaned up) (quoting *Highlands Hosp. Corp. v. Preece*, 323 S.W.3d 357, 368 (Ky. Ct. App. 2010)). So the claim fails for this independent reason as well.

10

In some circumstances, of course, repleading might be the appropriate response to allegations that fall short of stating a claim—particularly given the serious nature of the events and injuries at issue here. *See, e.g.*, 6 Wright & Miller, Fed. Prac. & Proc. § 1487 (3d ed.). But Starks hasn't requested this or indicated what else he might allege if given the opportunity. And because this is an alternative ground for the Court's ruling, KWCA preemption and Starks's forfeiture would render such an attempt futile in any event.

## ORDER

The Court grants MCP's and Bobbett's motion for judgment on the pleadings (DN 18).

Benjamin Beaton, District Judge
United States District Court

July 31, 2023